IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WILLIAM PADILLA, | |
| **Plaintiff,** | |
| v. | Case No. 2:22-CV-2430-JAR |
| HORIZON MANAGEMENT, L.L.C., | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff William Padilla brings this action under Title VII[1] against Horizon Management,

L.L.C. ("Horizon"), for racial discrimination and retaliation in his employment.[2]  This matter is

before the Court on Defendant's Motion for Summary Judgment (Doc. 55).  The sole dispute is

whether Defendant qualifies as an employer under Title VII.  The motion has been fully briefed,

and the Court is prepared to rule.  As described in more detail below, the Court grants the motion

because Defendant is not subject to Title VII liability.

### I.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no

genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[3]  In

applying this standard, the court views the evidence and all reasonable inferences therefrom in

the light most favorable to the nonmoving party.[4]  "There is no genuine issue of material fact

---

[1] 42 U.S.C. §§ 2000e-2, 3.

[2] Plaintiff originally filed suit against Midwest Health, Inc. ("Midwest"), but filed a Second Amended Complaint which substituted Horizon as the sole Defendant.  *See* Docs. 1, 9.  Accordingly, Midwest was terminated from this action on January 31, 2023.  *See* Doc. 9.

[3] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[4] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[5]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[7]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[9]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[11]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[12]  The facts "must be identified by reference

---

[5] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[6] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[7] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[8] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[10] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[11] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[13]  The

nonmoving party cannot avoid summary judgment by repeating conclusory opinions, allegations

unsupported by specific facts, or speculation.[14]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it

is an important procedure "designed to secure the just, speedy and inexpensive determination of

every action."[15]

## II.    Uncontroverted Facts

The following material facts are uncontroverted, stipulated to for the purposes of

summary judgment, or viewed in the light most favorable to Plaintiff.

Plaintiff was employed by Defendant as a maintenance technician from October 28,

2019, to April 13, 2021, when he was terminated.  Defendant employed no more than three

employees for each working day in each of 20 or more calendar weeks from 2018–2021.[16]

---

[13] *Adams*, 233 F.3d at 1246.

[14] Fed. R. Civ. P. 56(c)(4); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[16] Plaintiff attempts to controvert Defendant's factual assertions about how many employees it employed with the following paragraph, repeated verbatim in response to Defendant's facts 3–9:

> Angela Broxterman is the VP of Real Estate for Midwest Health, Inc.  Angela Broxterman made an offer of employment to Plaintiff William Padilla, which William Padilla accepted.  William Padilla reported to Angela Broxterman. William Padilla corresponded with Angela Broxterman regarding work related issues and she followed up to [sic] order to address them.  Angela Broxterman terminated William Padilla.  Midwest Health, Inc. has more than 1001 employees.  Horizon Management, LLC and Midwest Health, Inc. were joint employers of William Padilla because they shared or co-determined those matters governing the essential terms and conditions of employment.

Doc. 57 at 2–6 (citations omitted).  With the exception of the final sentence, which is an improper legal conclusion, these facts are supportive of Plaintiff's joint employer argument.  However, these facts fail to controvert Defendant's factual assertion that it, standing alone, employed no more than three employees for each working day in each of 20 or more calendar weeks from 2018 to 2021.  Nonetheless, the Court considers the facts stated in this paragraph, with the exception of the final sentence, as statements of additional fact offered by Plaintiff.  Plaintiff supports each additional fact with citations to exhibits, which he attached to his response.  *See* Docs. 57-1–57-6.

Defendant objects to the admissibility of each of Plaintiff's exhibits.  The Court declines to rule on Defendant's evidentiary objections because, as described below in the discussion section, even if the Court assumes

Angela Broxterman, the Vice President of Real Estate for Midwest, hired Plaintiff for his position with Defendant.  Midwest is a larger company than Defendant, and employs over 1,001 employees.  Plaintiff's offer of employment provided that the person he should report to was Broxterman.  Plaintiff corresponded with Broxterman about workplace issues, and Broxterman followed up to address them.  On April 13, 2021, Broxterman fired Plaintiff via email, listing the reason for termination as Plaintiff's failure to show up for work.

On January 27, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and obtained a right to sue notice.  Plaintiff alleged that he suffered discrimination based on his race—Puerto Rican of African descent—and asserted that he was fired in retaliation for reporting the discrimination.  Plaintiff did not pinpoint a specific time that he suffered discrimination and retaliation, but asserted that it occurred throughout his employment, from October 2018 to April 2021.

On October 21, 2022, Plaintiff filed suit in this Court against Midwest.  Soon after, an attorney for Midwest contacted Plaintiff's attorney and informed him that he had sued the wrong entity.  Midwest's attorney informed Plaintiff's attorney that Horizon was Plaintiff's employer, not Midwest.  Plaintiff then filed an Amended Complaint, substituting Horizon as the sole Defendant.  Plaintiff sought leave to amend multiple times for the purpose of re-adding Midwest as a Defendant, but the Court denied each request.

---

that each of Plaintiff's exhibits is admissible, Defendant is still entitled to summary judgment.  Therefore, the Court assumes without deciding that the above-quoted paragraph, minus the last sentence, is uncontroverted and supported by admissible evidence.

### III.    Discussion

Title VII "makes it 'an unlawful employment practice for an employer'"[17] to discriminate against employees because of an employee's protected characteristics.  However,

> [t]o spare very small businesses from Title VII liability, Congress provided that: "the term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."[18]

Defendant moves for summary judgment solely based on the argument that it does not qualify as an "employer" under Title VII, and therefore is not subject to Title VII liability.  Defendant asserts that Plaintiff cannot satisfy the prima facie cases for discrimination or retaliation because Defendant did not have fifteen or more employees during the relevant time period, and thus, is not an employer under the statute.[19]  As described above, Plaintiff fails to controvert the fact that Defendant, standing alone, did not employ fifteen or more employees between 2018 and 2021.[20]  Instead, Plaintiff asserts that Defendant satisfies the definition of "employer" under Title VII because Defendant is either a joint employer with, or the agent of, Midwest.  Thus, Plaintiff argues that the employees of both Defendant and Midwest should be counted to satisfy the employee-numerosity requirement under Title VII.

---

[17] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006) (quoting 42 U.S.C. § 2000e-2(a)(1)).

[18] *Id.* at 504–05 (ellipses omitted) (quoting 42 U.S.C. § 2000e(b)).

[19] Defendant mistakenly argued in its motion for summary judgment that the definition of "employer" under Title VII is a jurisdictional requirement.  Doc. 56 at 5–6.  However, Defendant abandons this argument in its reply, correctly noting that the definition of "employer" is an element of the prima facie case for all claims under Title VII.  *See Arbaugh*, 546 U.S. at 516 (holding that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue.").  As *Arbaugh* made clear, this Court has federal-question jurisdiction over Plaintiff's Title VII claims, regardless of whether Defendant employs the requisite number of employees to be subject to Title VII liability.  *See id.*

[20] Defendant does not dispute that, for the purposes of summary judgment, the relevant time period under Title VII is the broadest interpretation of Plaintiff's allegations of discrimination—i.e. anytime between 2018 and 2021.

Below, the Court considers whether Defendant and Midwest's employees may be aggregated under various theories, and concludes that there is insufficient evidence to tie the entities together for purposes of Title VII liability.  Therefore, the Court grants summary judgment to Defendant because no reasonable jury could find that Defendant constitutes an employer under Title VII.

### A.      Joint Employers

Plaintiff asserts that he was jointly employed by Midwest and Horizon, and offers evidence of a Midwest employee hiring, supervising, and firing him.  Plaintiff argues that Midwest meets the definition of "employer" under Title VII because it is a large company, and therefore, the Court should count all of Midwest's employees as Defendant's employees to satisfy the employee-numerosity requirement.  Defendant responds that, even if it jointly employed Plaintiff with Midwest, Plaintiff fails to show that the two entities jointly employed 15 or more employees.  The Court agrees with Defendant.  As described below, no reasonable jury could find that Midwest and Defendant jointly employed 15 or more employees.

"In some circumstances, courts may treat separate entities as a joint or single employer for purposes of determining the threshold number of employees required for an employer to be subject to suit under Title VII . . . ."[21]  The joint and single employer tests are distinct legal theories.[22]  "Under the joint employer test, two entities are considered joint employers if they share or co-determine those matters governing the essential terms and conditions of employment."[23]  "Most important to control over the terms and conditions of an employment

---

[21] *Avington v. Metro. Tulsa Urb. League*, 603 F. App'x 662, 663 (10th Cir. 2015).

[22] *See id.*

[23] *Id.* (quoting *Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014)).

relationship is the right to terminate it under certain circumstances . . . ."[24]  "Simply demonstrating control over one employee is not enough to prove joint employer status for all employees of the organization."[25]  Rather, "[t]he joint employer determination is 'employee-specific.'"[26]

Here, Plaintiff must show that Midwest and Defendant jointly employed at least 15 employees for Defendant to satisfy the Title VII definition of "employer."[27]  However, Plaintiff fails to raise a genuine dispute of material fact that Defendant and Midwest jointly employed any employee other than himself.  Plaintiff submits evidence that Broxterman, a Midwest employee, exercised control over the terms and conditions of his employment by hiring, supervising, and firing him.  Viewing these facts in the light most favorable to Plaintiff, a reasonable jury could find that Midwest and Defendant jointly employed Plaintiff.[28]  But Plaintiff's assertions that Midwest and Defendant are joint employers, writ large, are speculative and conclusory.

Plaintiff offers no evidence that Defendant shares or co-determines the terms and conditions of employment for any of Midwest's employees.  Nor does Plaintiff offer evidence that Midwest jointly employs any other employee of Defendant's.  In fact, Plaintiff fails to set forth factual allegations about any employee of either company.  Based on the record, no reasonable jury could find that Defendant employed more than three full-time employees for the

---

[24] *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1219 (10th Cir. 2002) (en banc).

[25] *Harris v. Cmty. Res. Couns. of Shawnee Cnty., Inc.*, No. 04-2578-CM, 2005 WL 3050149, at *3 (D. Kan. Nov. 15, 2005).

[26] *Id.* at *2 (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1324 (10th Cir. 2004)).

[27] *See id.* at *3 (explaining that the plaintiff failed to prove that the defendant was a joint employer of 15 or more employees because the plaintiff did not offer evidence about any employees other than herself).

[28] *See Montoya v. A & M Apartments, Inc.*, No. 11-cv-3354, 2012 WL 5332203, at *2 (D. Colo. Oct. 29, 2012) ("In general, 'determining whether an entity qualifies as an employer is a fact issue for the jury.'" (quoting *Bristol*, 312 F.3d at 1121)).

requisite length of time between 2018 and 2021.[29]  Therefore, Plaintiff fails to raise a genuine dispute of material fact that Defendant satisfies the employee-numerosity requirement by jointly employing 15 or more employees with Midwest.

### B.  Single Employer

Though not explicitly raised by Plaintiff in his briefs, Plaintiff's arguments about simply counting all of Midwest and Defendant's employees together align more closely with a single employer theory than a joint employer theory.[30]  Thus, out of an abundance of caution, the Court considers whether a reasonable jury could find that Defendant and Midwest constituted a single employer during the relevant time period.

"[T]wo entities can be found to effectively constitute a single employer if they are an 'integrated enterprise.'"[31]  In determining whether two nominally separate entities effectively constitute an integrated enterprise, "courts consider the following factors: interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control."[32]  Of these factors, centralized control of labor relations is "generally consider[ed] . . . to be the most important."[33]

The Court finds that a reasonable jury could not find that that Defendant and Midwest constituted a single employer at any time between 2018 and 2021.  The strongest fact in favor of

---

[29] Plaintiff was already factored into the employee count offered by Defendant, which stated that Defendant employed no more than three full-time employees at any time between 2018 and 2021.

[30] *See Bristol*, 312 F.3d at 1218 ("Although these two tests are sometimes confused, they differ in that the single-employer test asks whether two nominally separate entities should in fact be treated as an integrated enterprise, while the joint-employer test assumes that the alleged employers are separate entities." (citation omitted)).

[31] *Avington v. Metro. Tulsa Urb. League*, 603 F. App'x 662, 663 (10th Cir. 2015) (quoting *Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1226–27 (10th Cir. 2015)).

[32] *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998) (citing *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1089 (10th Cir. 1991)).

[33] *Bristol*, 312 F.3d at 1220.

finding that the two companies constitute a single employer is that Broxterman exercised exclusive control over hiring and firing Plaintiff.  Though Defendant was nominally Plaintiff's employer, it was Broxterman who hired, supervised, and fired Plaintiff, and there is no indication that Defendant participated in those decisions.  This could support a finding that Defendant and Midwest have centralized control over labor relations, which is the most important factor to the single employer test.  However, the record is devoid of even the most basic factual assertions about the relationship between Midwest and Defendant, such as whether Defendant is a subsidiary of Midwest, or if the companies shared finances.[34]  There is no evidence whatsoever that would support a finding that the companies had interrelated operations, common management, or common ownership and financial control.  And though Plaintiff offers some evidence of centralized control over labor relations, as described above, he offers only himself as an example.  Without any evidence as to the business relationship between Defendant and Midwest, Plaintiff's evidence that a Midwest employee controlled his own employment fails to support a broader inference that the two companies constituted an integrated enterprise.

Therefore, the Court finds that Plaintiff fails to create a genuine dispute of material fact that Defendant and Midwest constituted a single employer.

## C.    Agency Relationship

Plaintiff alternatively argues that Defendant was the agent of Midwest, and that both entities' employees should be counted to satisfy the employee-numerosity requirement.  Plaintiff argues that Defendant was an agent of Midwest because Broxterman hired, supervised, and fired Plaintiff.  In essence, Plaintiff asserts that Midwest controlled Defendant.  Defendant responds

---

[34] Plaintiff refers to Defendant as a subsidiary of Midwest in his briefs, but fails to set forth this allegation as a properly supported fact.  *See*, *e.g.*, *Avington*, 603 F. App'x at 664 (affirming a district court's holding that an employer could not be a single or joint employer with another entity because of "the absence of any interrelations of operations or common management between" the entities).

that there is no evidence that it served as agent to Midwest, and further argues that Plaintiff's legal support is distinguishable. The Court concludes that no reasonable jury could find that Defendant was the agent of Midwest.

At the outset, the Court must determine which agency theory to apply, because the Tenth Circuit has employed the term "agent" under Title VII in various contexts. The Tenth Circuit has applied common law agency principles in the context of *respondeat superior* liability and attempts to pierce the corporate veil,[35] and modified agency principles in the context of satisfying the employee-numerosity requirement.[36] Plaintiff does not set forth a particular legal test to assist the Court in considering his agency arguments. However, Plaintiff relies heavily on the reasoning from *Owens v. Rush*,[37] which applied modified agency principles. Therefore, the Court considers whether Defendant is an agent of Midwest under the agency principles elucidated in *Owens*, instead of under traditional agency principles.

In *Owens*, the Tenth Circuit held that "for purposes of Title VII an elected county sheriff is an agent of the county for all matters properly committed to his discretion—including the hiring and firing of employees."[38] The Tenth Circuit "liberally construed" the 15-employee limitation under Title VII, explaining that, "[w]hatever the reason for excluding employers with fewer than fifteen employees from Title VII coverage, it should not be construed to exempt a political subdivision with many employees from Title VII proscriptions on grounds that the

---

[35] *See Lambertsen v. Utah Dept. of Corr.*, 79 F.3d 1024, 1028 (10th Cir. 1996) (applying common law agency principles in considering "whether the hiring party controls the means and manner by which work is accomplished.").

[36] *See Owens v. Rush*, 636 F.2d 283 (10th Cir. 1980) (applying a modified agency theory for political subdivisions, and finding that a Sheriff is the agent of a County for the same reasons that a Board of Commissioners is an agent of a County).

[37] *Id.*

[38] *Id.* at 287.

immediate employing agent has fewer than fifteen employees."[39]  Thus, the Tenth Circuit's ruling was predicated upon the close relationship that exists between political subdivisions.

Here, the only facts Plaintiff offers in support of his agency theory are examples of Broxterman controlling the terms and conditions of Plaintiff's employment.  These allegations are not persuasive under *Owens*, because they do not support a finding that Defendant acted on Midwest's behalf, as the Sheriff acted on behalf of the County.  Rather, Plaintiff's allegations suggest the inverse relationship, by asserting that Midwest acted on behalf of Defendant.  In his response, Plaintiff incorrectly describes the relationship in *Owens* as one where the County controlled the Sheriff, and he asserts that the same relationship exists between Defendant and Midwest.  However, in *Owens*, the Sheriff had total control over all employment matters committed to his discretion.[40]  *Owens* was not about an agency relationship based on control; it was about the delegation of power to an agent.  Midwest's control over Plaintiff's employment does not mirror the relationship between the Sheriff and the County in *Owens*.

*Owens* liberally construed the definition of an agency relationship due to the unique relationship between two political subdivisions which acted on behalf of the same populace.[41]  But *Owens* expressly distinguished its factual scenario from that of separate businesses, explaining that "[t]he sheriff and the county . . . are more analogous to a department and the corporation it operates within than to separate corporate entities."[42]  Here, there are simply no facts that would support an inference that Defendant and Midwest shared a similar relationship.  Nor are there any facts, or allegations, that Defendant acted on Midwest's behalf for any

---

[39] *Id.*

[40] *Id.* at 286–87.

[41] *Id.* at 287.

[42] *Id.* at 286 n.2.

purpose.  Given this dearth of factual allegations, no reasonable jury could find that Defendant

acted as agent for Midwest under the principles outlined in *Owens*.

Therefore, Defendant is entitled to judgment as a matter of law because it does not

employ a sufficient number of employees to be subject to Title VII.

## IV.    Leave to Amend

Plaintiff asserts that, as an alternative to granting summary judgment for Defendant, the

Court should grant him leave to file a Third Amended Complaint to re-add Midwest as a

Defendant.  Plaintiff asserts that such relief is proper under Fed. R. Civ. P. 56(d) or (e), which

both grant the Court wide discretion to "issue any . . . appropriate order."[43]  Plaintiff argues that

adding Midwest would moot Defendant's motion, and notes that he has attempted to add

Midwest for months.  Defendant responds that granting leave to amend at this late stage would

be improper, and notes that both presiding Magistrate Judge Rachel E. Schwartz and this Court

have ruled against Plaintiff's prior requests for leave to amend.

The Court declines Plaintiff's request for leave to amend as untimely and inappropriate.

Plaintiff previously sought leave to amend out-of-time from Judge Schwartz four times, and

sought review of her Orders denying leave in this Court.[44]  Plaintiff now characterizes the

Court's Orders denying leave to amend out-of-time as "lectures," and asserts that "[f]urther

---

[43] Notably, Plaintiff fails to show that Rules 56(d) or (e) are applicable here.  Rule 56(d) applies in circumstances where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ."  Fed. R. Civ. P. 56(d).  Plaintiff did not offer into evidence any affidavit or declaration regarding his inability to present essential facts to justify his opposition.  Rule 56(e) applies where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . ."  Fed. R. Civ. P. 56(e).  Plaintiff does not identify any fact that he failed to properly support or controvert.

[44] The Court incorporates by reference its summary of Plaintiff's numerous requests for leave to amend in Doc. 52 at 1–3.  By way of summary, Plaintiff sought leave to amend, via multiple procedural avenues, from Judge Schwartz and this Court five separate times. *See* Docs. 33, 35, 40, 42, 47.  Only three of those motions were in compliance with the Local Rules, thus, the Court issued only three substantive Orders denying Plaintiff's requested relief. *See* Docs. 46, 49, 52.

chastisement about that grievous wrong is unnecessary."[45]  The Court will not rehash the substance of the prior Orders denying Plaintiff leave to amend out-of-time.[46]  Suffice it to say, Plaintiff has had multiple opportunities to demonstrate why leave to amend would be appropriate, and he has failed to meet his burden each time.[47]  Plaintiff may not now seek leave to amend to escape a meritorious motion for summary judgment.[48]

The Court also notes that adding Midwest to this suit would not simply moot Defendant's motion, as Plaintiff argues.  As described above, Plaintiff fails to introduce any evidence about the relationship between Midwest and Defendant.  Thus, whether Midwest was a party to this suit or not, it would be appropriate to award summary judgment to Defendant because Defendant did not employ the requisite number of employees between 2018 and 2021.

In sum, Plaintiff has presented no argument or evidence to justify denying summary judgment to Defendant.  Therefore, Plaintiff's request to file a Third Amended Complaint is denied and summary judgment is awarded to Defendant.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 55) is **granted**.  The Clerk is directed to prepare a judgment in favor of Defendant and terminate this action.

**IT IS SO ORDERED.**

---

[45] Doc. 57 at 11.

[46] *See* Docs. 46, 49, and 52.

[47] In his response, Plaintiff again confuses the appropriate legal test for leave to amend, stating that "Plaintiff repeatedly demonstrated good cause for the requested amendment, namely that he did not want this case to be funneled into the Summary Judgment mill that routinely grinds Title VII cases into flour before they can be heard by a factfinder."  Doc. 57 at 10.  Plaintiff's desire to avoid summary judgment does not constitute "good cause" in the Tenth Circuit, as this Court has previously explained at length.  Doc. 52 at 5–7.

[48] Additionally, a Pretrial Order was entered in this case on February 14, 2024.  Doc. 54.  This Pretrial Order supersedes the pleadings.  *See* Fed. R. Civ. P. 16(d), (e).  Plaintiff fails to acknowledge the Pretrial Order, or whether Rule 16 applies.

Dated: June 11, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE